UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NOAH JACKSON,<br><br>Defendant. | Case No. 23-CR-53 (ABJ) |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplemental Memorandum in Aid of Sentencing. On June 17, 2024, defense counsel for the defendant submitted arguments, addressing plea negotiations that occurred during the pendency of this case. The United States respectfully submits this Supplemental Memorandum in Aid of Sentencing to address issues raised by the defense, after the government initially submitted its Memorandum in Aid of Sentencing.

**I.      BACKGROUND**

Below is a recitation of the relevant facts.

1.      On November 1, 2023, the government emailed defense counsel, stating that his client's Criminal History was 5 and that his Criminal History Category was III. Based on this information, the government believed that the defendant's guideline range was 30-37 months' incarceration. The government asked defense counsel whether his client would accept the government's plea proposal at the next status hearing that was to be held on November 3, 2023. The government stated that if the defendant accepted the government's offer, it would cap its allocution at sentencing to the bottom of the guidelines range.

2.      On November 3, 2023, at 11 am the defendant's status hearing took place. At that hearing, defense counsel stated that the government had sent the defendant a plea offer and that

1

the defendant indicated that he would accept the government's plea offer. The court asked defense counsel the terms of the plea offer and defense counsel stated the defendant's guideline range was 30-37 months' incarceration and that the government would allocute to a bottom of the guideline range if the defendant pled guilty. The government confirmed this term was included in its plea offer.

3. After the hearing, the undersigned was drafting the plea paperwork to send to defense counsel when he realized that he was not authorized to allocute for a cap at the bottom of the guideline range of 30 months, but rather the top of the range at 37 months.

4. On November 3, 2023, at 6:20 pm, the undersigned emailed defense counsel, withdrew his previous plea offer, informed defense counsel that he could not get authorization to cap at the bottom of the range, and asked defense counsel if his client would accept a plea offer where the government allocuted at the top of the guideline range.

5. Defense counsel replied that same evening at 6:39 pm, stating that he would have to litigate the issue if the government did not offer to allocute for 30 months' incarceration.

6. Instead of litigating the issue, on November 13, 2023, defense counsel asked the government to send him a plea agreement, which contained a provision stating that the government would agree to allocute to the top of the guidelines range. Defense counsel stated that he wanted to discuss the situation and his client's options with him. In response to defense counsel's request, the government sent the defense counsel a copy of the plea agreement as well as the statement of offense.

7. On November 14, 2023, at 10:22 pm, after reviewing the paperwork, defense counsel informed the undersigned that his client had not yet signed the plea agreement and that his client wanted two changes made in the draft statement of offense. *See* Gov't Ex. A at 2-4.

8.      On November 15, 2023, at 10:12 am, after reviewing the defendant's negotiation requests, the government accepted one of his requests, rejected the other, and informed defense counsel of the government's position.

9.      On November 15, 2023, at 10:54 am, defense counsel accepted the government's second offer and asked the government to send over the newly negotiated statement of offense.

10.     On November 17, 2023, the defendant pled guilty.

I.   **LEGAL ARGUMENT**

Defense counsel asks this court to give the defendant a below guideline sentence in order to enforce a plea offer previously withdrawn by the government. Def. Sent'g Memo at 14. As grounds for support, defense counsel asserts that the court should enforce a previously issued plea offer that contained a scrivener's error and withdrawn before the defendant was able to rely on that error to his detriment. The court should deny defense counsel's request, as the Supreme Court has reviewed similar claims and have rejected them. Moreover, contract law does not support defense counsel's request.

**A.  The Initial Plea Offer is Unenforceable Under Supreme Court Precedent**

Whether a prosecutor can withdraw from an agreement prior to its acceptance by the court has been subject to debate. In *Cooper v. United States*, the Fourth Circuit Court of Appeals concluded that the Fifth Amendment right to due process and Sixth Amendment right to counsel were both implicated in the prosecution's withdrawal of a plea offer prior to court approval. 594 F.2d 12, 18 (4th Cir. 1979) *overruled by Mabry v. Johnson*, 467 U.S. 504 (1984). The *Cooper* court held that a specific, unambiguous, and reasonable proposal must, under principles of "constitutional fairness," be fulfilled if the defendant communicates his assent in a reasonable time.

3

*Id*. at 19. The *Cooper* court concluded that the proper remedy was the specific performance of the plea offer. *Id*. at 20.

The Supreme Court rejected the *Cooper* court's holding in *Mabry v. Johnson*, 467 U.S. 504 (1984), *disapproved of on other grounds by Puckett v. United States*, 556 U.S. 129 (2009). There, the Court was asked whether a respondent's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced. In that case, three members of a family returned home to find a burglary in progress. The respondent, who was one of the burglars, exchanged fire with the homeowner. *Id.* at 505. During the exchange, the homeowner's daughter was killed. *Id.* The respondent was convicted of burglary, assault, and murder but his murder conviction was set aside by the Arkansas Supreme Court. *Id.* After the murder conviction was set aside, the respondent and government counsel engaged in plea negotiations.

At the time of the plea negotiations, the respondent was already serving a concurrent 21– and 12–year sentence for burglary and assault. *Id.* On October 27, 1972, the prosecutor offered the respondent a plea offer in which the prosecutor would recommend a sentence of 21 years to be served concurrently with the burglary and assault sentences, if the respondent pled guilty to being an accessory after a felony murder. *Id.* at 506. The next day, counsel told his client about the government's offer and the respondent agreed to accept it. *Id.* The following Monday, respondent's counsel called the prosecutor and told him that the respondent would accept the government's plea offer. *Id.* The prosecutor then told counsel that a mistake had been made and withdrew the offer. *Id.* The prosecutor then issued a new offer, proposing that he recommend that a sentence of 21 years be served consecutively to respondent's other sentences. *Id.* Respondent rejected the new offer and elected to stand trial. The respondent eventually accepted the government's second offer and the state trial judge imposed a 21-year sentence that was to be served consecutively to the

previous sentences. *Id.*

After exhausting his state remedies, the respondent filed a petition for a writ of habeas corpus, asking the court to enforce the first plea offer. The District Court "dismissed the petition, finding that respondent had understood the consequences of his guilty plea, that he had received the effective assistance of counsel, and that because the evidence did not establish that respondent had detrimentally relied on the prosecutor's first proposed plea agreement, respondent had no right to enforce it." *Id.* The Court of Appeals reversed, concluding that "fairness" precluded the prosecution's withdrawal of a plea proposal once accepted by respondent. *Id.*

The Supreme Court reversed the Court of Appeals, upholding the terms of the second deal. *Id.* at 510. The *Mabry* Court held that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Id.* at 507. In doing so, the Court held that the respondent's acceptance of the prosecutor's first proposed plea bargain did not create constitutional right to have the bargain specifically enforced after the prosecutor told counsel that a mistake had been made and withdrew the offer. *Id.* Moreover, the *Mabry* Court reversed the Court of Appeals, reasoning that the respondent agreed to the second deal, intelligently and voluntarily, after being fully briefed by his defense counsel. *Id.* at 508 (stating "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

Although some *Mabry* dictum was disapproved of in *Puckett v. United States*, 556 U.S. 129 (2009), the central tenant of *Mabry* – that plea offers are revocable until accepted by the court, even if the defendant has accepted the terms – is still good law. *See United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 102 (1st Cir. 2014) (stating the appellant's due process argument fails

because he "did not enter a guilty plea, did not forgo a jury trial on any charge, and did not otherwise detrimentally rely on the government's promise ... [and therefore h]e is in no worse position than if no offer had ever been made by the government") (quoting *United States v. Papaleo*, 853 F.2d 16, 18 (1st Cir. 1988)).

Ultimately, the Supreme Court has reviewed a situation nearly identical to the facts here and concluded forty years ago, that a defendant has no constitutional right to the enforcement of a withdrawn plea offer. Given the precedent set by the Supreme Court, this court should deny the defendant's request to give him a below guideline sentence, which was based on the government's withdrawn plea offer.

### B. Contract Law Does Not Require Enforcement of Withdrawn Government Offer

The court should deny defense counsel's request, as the defendant has no contractual right to the enforcement of the government's initial plea offer.

Generally, neither the defendant nor the government is bound by a plea agreement until it is approved by the court. Relying on the precedent set by *Mabry* and in line with its sister circuits, the United States Court of Appeals for the District of Columbia has stated that "the prosecutor generally is free to refuse to plea bargain or, having made a plea offer, *to withdraw it at any time*." *United States v. Dockery*, 965 F.2d 1112, 1116 (D.C. Cir. 1992) (citing *Mabry*, 467 U.S. at 506-08) (emphasis added); *see accord United States v. Norris*, 486 F.3d 1045, 1051-52 (8th Cir. 2007) (mentioning "the general rule that the court must have accepted a guilty plea before the parties may be bound to an associated plea agreement"); *United States v. Kuchinski*, 469 F.3d 853, 857-58 (9th Cir. 2006) (" '[a] plea agreement that has not been entered and accepted by the trial court does not bind the parties.' ") (quoting *United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir. 1993)).

However, some courts have recognized a detrimental reliance exception to the general rule

6

that can bind the government, but not the defendant. In this case a "defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding" even where the agreement has not been accepted by the court. *See Vizcarrondo-Casanova*, 763 F.3d at 103 ("In short, the obligation to perform is conditional on actual performance by the defendant (or perhaps some other form of detrimental reliance.")); *United States v. Wells*, 211 F.3d 988, 994, n. 3 (6th Cir. 2000) ("[I]f [defendant] substantially relied on the plea agreement, or was prejudiced by providing information which the government used in its ongoing investigation or at trial, we think that the contract would be—in the absence of breach by [defendant]—binding on the government."); *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992) ("neither the defendant nor the government is bound by a plea agreement until it is approved by the court…but a defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding."); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir. 1984) ("A defendant has no right to engage in plea bargaining in the first place. The offer, once made, is still in the discretion of the prosecutor. Like any offeror, he can withdraw his offer at any time, unless, perhaps, the defendant has relied on the offer and the prosecutor should be estopped from withdrawing it."); *Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980) (stating "we reject a *Cooper*-type rule that would allow specific performance of an unconsummated plea in the absence of such detrimental reliance because a jury trial on the charge is an adequate remedy."). Under case law set by this circuit and numerous other circuits, the defendant is not entitled to specific performance of the government's withdrawn plea offer under the general rule or its exception.

Here, the second negotiated plea offer was not accepted and approved by the court until November 17, 2023. Therefore, under Supreme Court precedent and contract law, the court is not

7

obligated to enforce the government's November 1 plea offer.

In addition, the detrimental reliance exception does not apply as the defendant did not perform a duty or give up any right between when the government extended the plea offer on November 1 and when it withdrew the plea offer on November 3. At no point in the entirety of the sentencing memo, does defense counsel raise one instance where his client actually relied – to his detriment – on the government's November 1 plea offer.

Moreover, the government withdrew a *plea offer* that contained an erroneous term. At the time of withdrawal, the defendant did not have the full plea agreement that contained all of the material terms that the defendant needed to review before he pled guilty.

Finally, it is important to note that the defendant did not accept the government's plea agreement, but rather indicated he would plead guilty based on some important terms relayed in an email. This distinction is important. A plea offer email only contains *some* of the relevant material terms, while a plea agreement contains *all* of the material terms that binds both the government and the defendant. In this case, the plea offer ultimately signed by the defendant included the following additional key terms that were not included in the November 1 plea offer email.

1. Property Forfeiture;
2. Conditions of Release;
3. Whether the defendant was able to seek an offense-level calculation different from the Estimated Offense Level in the plea agreement;
4. Statement of Offense;

Upon receiving the full plea agreement, the defendant could have viewed these additional key provisions, balked at pleading guilty, and ultimately decided to go to trial unless the government negotiated and changed any one of these provisions. That is in fact what happened here. As the facts show, after defense counsel received the full plea agreement, he – on behalf of

8

his client – continued to negotiate the terms under which the defendant would plead guilty up until November 15. *See* Gov't Ex. A at 2-4. One cannot argue, on the one hand, that they have an enforceable plea agreement, while on the other hand, continue to negotiate key terms of the agreement that would dictate whether they'd ultimately plead guilty, as defense counsel is doing. Here, the parties did not have an enforceable agreement on November 1 for the simple fact that the defendant had not yet received the plea agreement and statement of offense that contained numerous key and important terms, which the defendant felt compelled to negotiate and try to change. How can the defendant have an enforceable agreement on November 1 and then negotiate key terms on November 15? The simple answer is one cannot.

The court is under no obligation to sentence the defendant to 30 months' incarceration based on a plea offer that was withdrawn, absent the defendant's detrimental reliance – even if the defendant stated that he would accept the initial offer. As the case law makes clear, after *Mabry*, courts have held that "plea offers are revocable until accepted by the court, even if the defendant has accepted the terms." *State v. Bobo*, No. W201500930CCAR3CD, 2016 WL 7799284, at *4 (Tenn. Crim. App. Mar. 2, 2016); *see also Cordova v. Terhune*, 164 F. App'x 609, 613 (9th Cir. 2006) ("In California, even after a defendant has accepted a plea offer…a prosecutor may withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain") (internal quotations omitted)).

Given that the overwhelming legal authority – both constitutional and contractual – rejects defense counsel's request and legal rationale, the court should follow suit, deny defense counsel's request, and sentence the defendant to 37 months' incarceration.

**CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the court sentence Defendant Noah Jackson to **37 months' imprisonment** to be followed by three years of supervised release.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    /s/ *Jared English*
        JARED ENGLISH
        Assistant United States Attorney
        D.C. Bar No. 1023926
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C.  20530
        Telephone: 202-465-0089
        Email: Jared.English@usdoj.gov

# Government Exhibit A

| | |
|---|---|
| **From:** | Marston, John |
| **To:** | English, Jared (USADC) |
| **Subject:** | [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ) |
| **Date:** | Wednesday, November 15, 2023 1:26:44 PM |

Yes, we can do that.

**John Marston** | **Partner**

FOLEY
HOAG LLP

**FOLEY HOAG LLP**
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com

**From:** English, Jared (USADC) <Jared.English@usdoj.gov>
**Sent:** Wednesday, November 15, 2023 1:22 PM
**To:** Marston, John <jmarston@foleyhoag.com>
**Subject:** RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

**\*\*EXTERNAL\*\***

Hi John,

Thank you for letting me know. I'll sign the signature page and send it you for your client's signature. Also, my understanding is that Judge Berman-Jackson likes defendant's to initial and date every page of the plea agreement. Can you please have your client do that?

Jared

**From:** Marston, John <jmarston@foleyhoag.com>
**Sent:** Wednesday, November 15, 2023 12:38 PM
**To:** English, Jared (USADC) <JEnglish@usa.doj.gov>
**Subject:** [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

I think we are good. He wants to sign everything Friday when we are in court. Not sure why he wants to wait, but he might be getting tired of my visits.

Is it ok if I meet him in the courthouse prior to our 2 pm hearing Friday and get his signatures then?

**John Marston** | **Partner**

FOLEY
HOAG LLP

**FOLEY HOAG LLP**
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com

---

**From:** English, Jared (USADC) <Jared.English@usdoj.gov>
**Sent:** Wednesday, November 15, 2023 10:56 AM
**To:** Marston, John <jmarston@foleyhoag.com>
**Subject:** Re: United States v. Jackson, Noah - 23-CR-53 (ABJ)

**\*\*EXTERNAL\*\***

---

The updated SOO was included in a previous email.

**From:** Marston, John <jmarston@foleyhoag.com>
**Sent:** Wednesday, November 15, 2023 10:54:21 AM
**To:** English, Jared (USADC) <JEnglish@usa.doj.gov>
**Subject:** [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

Ok, please send me the final SOO version with the one modification you have agreed to make.

**John Marston** | **Partner**

**FOLEY**
**HOAG** LLP

**FOLEY HOAG LLP**
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com

---

**From:** English, Jared (USADC) <Jared.English@usdoj.gov>
**Sent:** Wednesday, November 15, 2023 10:12 AM
**To:** Marston, John <jmarston@foleyhoag.com>
**Subject:** RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

**\*\*EXTERNAL\*\***

---

John,

My supervisor has reviewed your request. After reviewing it, she has said that we will not make the modification that you are requesting. The videos that you are requesting are in the March 6, 2023 initial discovery folder.

Jared

**From:** Marston, John <jmarston@foleyhoag.com>
**Sent:** Wednesday, November 15, 2023 9:15 AM
**To:** English, Jared (USADC) <JEnglish@usa.doj.gov>
**Subject:** [EXTERNAL] Re: United States v. Jackson, Noah - 23-CR-53 (ABJ)

Is there anyway we could modify it to simply quote a YouTube video. Like, "in a video posted to YouTube, the D can be heard stating [fill in quote about giggle switch]."

And can you point me to video in discovery? Thanks.

John
202-253-1104

_____

From: English, Jared (USADC) <Jared.English@usdoj.gov>
Sent: Wednesday, November 15, 2023 9:02:06 AM
To: Marston, John <jmarston@foleyhoag.com>
Subject: RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

**EXTERNAL**
_____

Good morning John,

I've sent your request to my supervisor to modify the SOO. The change as it relates to your client not transporting the firearm across state lines has been accepted and is reflected in the attached SOO. With regards to the first change, I am afraid that we cannot accept it.

Jared

From: Marston, John <jmarston@foleyhoag.com>
Sent: Tuesday, November 14, 2023 10:22 PM
To: English, Jared (USADC) <JEnglish@usa.doj.gov>
Subject: [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

Not signed yet, but I'm hoping it'll be a yes and we'll have it signed tomorrow.

Two changes to SOO that Noah wants. First, bottom of page three, he wants the last sentence deleted. It says, "The defendant knew that the switch on the firearm converted it to a machinegun and had previously rapped about having such a switch on his Glock, as evidenced in multiple of his music videos posted to YouTube." The difficulty here, I think, is that he didn't know what it was or what it meant. It is fine to keep the previous sentence saying the "giggle switch" was on the gun making it fully automatic. But the sentence about his knowledge and the music videos was too much for him. I don't think we need it, so hopefully you can just delete it.

Second, on page 4, he was thrown off by the interstate commerce point because it made him feel you were saying he brought it across state lines. Can we revise it to say: "There are no firearms or ammunition manufacturers in Washington, D.C. Therefore, the firearm traveled in interstate commerce (although there is no allegation or evidence that Defendant Jackson himself brought the firearm across state lines)."

John Marston | Partner

FOLEY
HOAG LLP

FOLEY HOAG LLP
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com<https://protect2.fireeye.com/v1/url?k=c9462c11-96dd14c8-c94108f4-ac1f6b01751a-afb92dc7c2aae707&q=1&e=277fa36e-a52d-4a3f-9eb3-f6ee05df7180&u=https%3A%2F%2Fwww.foleyhoag.com%2F>

From: English, Jared (USADC) <Jared.English@usdoj.gov<mailto:Jared.English@usdoj.gov>>
Sent: Tuesday, November 14, 2023 1:35 PM
To: Marston, John <jmarston@foleyhoag.com<mailto:jmarston@foleyhoag.com>>
Subject: RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

**EXTERNAL**

_____

John,

I've attached a statement of the offense that includes the signature page on the bottom.

Best,

Jared

From: Marston, John <jmarston@foleyhoag.com<mailto:jmarston@foleyhoag.com>>
Sent: Tuesday, November 14, 2023 1:28 PM
To: English, Jared (USADC) <JEnglish@usa.doj.gov<mailto:JEnglish@usa.doj.gov>>
Subject: [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)

This is labeled page 3, but the SOO has more pages than that. I think this is confusing and in this case, its already hard enough to get where you want to go. Can you add to the SOO and resend?

John Marston | Partner

FOLEY
HOAG LLP

FOLEY HOAG LLP
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com<https://protect2.fireeye.com/v1/url?k=5d134358-02887b81-5d1467bd-ac1f6b01751a-09b804158f8c83c5&q=1&e=277fa36e-a52d-4a3f-9eb3-f6ee05df7180&u=https%3A%2F%2Fwww.foleyhoag.com%2F>

From: English, Jared (USADC) <Jared.English@usdoj.gov<mailto:Jared.English@usdoj.gov>>
Sent: Tuesday, November 14, 2023 1:22 PM
To: Marston, John <jmarston@foleyhoag.com<mailto:jmarston@foleyhoag.com>>
Subject: RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)


**EXTERNAL**

_____

Here you go. Can you and your client please sign the attached form?


From: Marston, John <jmarston@foleyhoag.com<mailto:jmarston@foleyhoag.com>>
Sent: Tuesday, November 14, 2023 1:17 PM
To: English, Jared (USADC) <JEnglish@usa.doj.gov<mailto:JEnglish@usa.doj.gov>>
Subject: [EXTERNAL] RE: United States v. Jackson, Noah - 23-CR-53 (ABJ)



Jared, do you want Noah to sign the SOO? There's no signature block for him on that document.


John Marston | Partner

FOLEY
HOAG LLP

FOLEY HOAG LLP
1717 K Street, N.W.
Washington, D.C. 20006-5350

+12022617321 phone

www.foleyhoag.com<https://protect2.fireeye.com/v1/url?k=954165b3-cada5ce2-95464156-ac1f6b01770e-4c597f9e58064b12&q=1&e=c6d08ada-a187-4922-b062-301b0e60968a&u=https%3A%2F%2Fwww.foleyhoag.com%2F>

From: English, Jared (USADC) <Jared.English@usdoj.gov<mailto:Jared.English@usdoj.gov>>
Sent: Tuesday, November 14, 2023 8:19 AM
To: ABJ_DCDecf@dcd.uscourts.gov<mailto:ABJ_DCDecf@dcd.uscourts.gov>
Cc: Marston, John <jmarston@foleyhoag.com<mailto:jmarston@foleyhoag.com>>
Subject: United States v. Jackson, Noah - 23-CR-53 (ABJ)


**EXTERNAL**

_____

Good morning,

We have a potential plea hearing scheduled for this coming Friday, November 17. Yesterday, I sent defense counsel plea paperwork. Please find attached an unexecuted copy of the plea agreement. We'll file an executed copy of the agreement if Mr. Jackson chooses to sign the plea agreement.

Please let me know if you have any questions.

Best,

Jared English | Assistant U.S. Attorney

U.S. Attorney's Office for the District of Columbia

Criminal Division | Federal Major Crimes

601 D Street NW, Room 5.1310

Washington, DC 20530

Office: (202) 252-2628

Cell: (202) 465-0089

Jared.English@usdoj.gov<mailto:Jared.English@usdoj.gov>

Any tax advice included in this document and its attachments was not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Foley Hoag LLP immediately -- by replying to this message or by sending an email to postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com> -- and destroy all copies of this message and any attachments without reading or disclosing their contents. Thank you.

For more information about Foley Hoag LLP, please visit us at www.foleyhoag.com<https://protect2.fireeye.com/v1/url?k=93848502-cc1fbddb-9383a1e7-ac1f6b01751a-dd602b0e4712ae87&q=1&e=277fa36e-a52d-4a3f-9eb3-f6ee05df7180&u=http%3A%2F%2Fwww.foleyhoag.com%2F>>.